FILED

2014 JUN 16  AM 3: 44

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1 | OGLOZA FORTNEY LLP
2 |   Darius Ogloza (CA Bar 176983)
   |   dogloza@oglozafortney.com
3 |   David C. Fortney (CA Bar 226767)
   |   dfortney@oglozafortney.com
4 | 535 Pacific Avenue, Suite 201
   | San Francisco, California 94133
5 | Telephone: (415) 912-1850
6 | Facsimile: (415) 887-5349

7 | Attorneys for Plaintiffs
   | RODNEY MILLER and MILLER
8 | FAMILY INVESTMENT, L.P.

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | CV14-4617 SS

12 | RODNEY MILLER and MILLER
   | FAMILY INVESTMENT, L.P., a     CASE NO. _____
13 | Texas partnership, as assignees
   | of Prima Capital Group, Inc., a
14 | Delaware corporation,            **COMPLAINT FOR:**

15 |                    Plaintiffs,   **(1) BREACH OF WRITTEN
   |                                      CONTRACT**
16 |        v.
                                      **(2) BREACH OF COVENANT OF
17 | FELIX INVESTMENTS LLC, a New          GOOD FAITH AND FAIR
   | York limited liability company; FACIE   DEALING**
18 | LIBRE ASSOCIATES II, LLC, a
   | Delaware limited liability company;  **(3) TORTIOUS INTERFERENCE
19 | FACIE LIBRE MANAGEMENT               WITH CONTRACT**
   | ASSOCIATES, LLC, a Delaware
20 | limited liability company; LIBER    **(4) CONVERSION**
   | ARGENTUM ASSOCIATES, LLC, a
21 | Delaware limited liability company;  **DEMAND FOR JURY TRIAL**
   | LIBER ARGENTUM
22 | MANAGEMENT ASSOCIATES,
   | LLC, a Delaware limited liability
23 | company; FRANK MAZZOLA,
   | WILLIAM BARKOW, and
24 | DOES 1-10, inclusive,

25 |                    Defendants.

26 |

27 |

28 |

OGLOZA FORTNEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT

Plaintiffs RODNEY MILLER and MILLER FAMILY INVESTMENT, L.P., (collectively, "Plaintiffs"), as assignees of Prima Capital Group, Inc. ("Prima") and Elias Argyropoulos ("Argyropoulos"), for their complaint against defendants, and each of them, allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(a)(1). The matter in controversy, exclusive of interest and costs, exceeds $75,000, and the action is between citizens of different states.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that many of the acts and transactions giving rise to this action occurred in this District, specifically:

(a)     Prima, the assignor of the claims alleged herein, maintains its primary place of business within this District in Santa Barbara County, California;

(b)     Prima entered into the investment contracts at issue in this action in Santa Barbara County; and

(c)     Defendants solicited the investments alleged in this complaint, and others, within this District both in person and by the transmission of communications into this District.

## THE PARTIES

3.     Plaintiff RODNEY MILLER is an individual residing in Dallas County, Texas, and is a real party in interest in the claims asserted herein by virtue of an assignment of claims dated June 11, 2014 from Prima Capital Group, Inc. and Elias Argyropoulos (collectively, "Prima").

4.     Plaintiff MILLER FAMILY INVESTMENT, L.P. is a Texas limited partnership, and is a real party in interest in the claims asserted herein by virtue of an assignment of claims dated June 11, 2014 from Prima.

5.     Defendant FELIX INVESTMENTS LLC ("Felix") is a New York limited liability company with its principal place of business in New York, New

1   York.

2      6.   DEFENDANT FACIE LIBRE ASSOCIATES II, LLC ("Facie Libre")

3   is a Delaware limited liability company with a principal place of business in New

4   York, New York.

5      7.   Defendant FACIE LIBRE MANAGEMENT ASSOCIATES II, LLC

6   ("Facie Manager") is a Delaware limited liability company with a principal place of

7   business in New York, New York.

8      8.   Defendant LIBER ARGENTUM ASSOCIATES, LLC ("Liber

9   Argentum") is a Delaware limited liability company with a principal place of

10  business in New York, New York.

11     9.   Defendant LIBER ARGENTUM MANAGEMENT ASSOCIATES,

12  LLC ("Liber Manager") is a Delaware limited liability company with a principal

13  place of business in New York, New York.

14     10.   On information and belief, Defendant FRANK MAZZOLA

15  ("Mazzola") at all relevant times herein alleged was an owner and registered

16  representative of Felix, and a manager of both Liber Manager and Facie Manager.

17  On information and belief, Mazzola controlled Felix, Liber Manger and Facie

18  Manager at all relevant times alleged herein.

19     11.   On information and belief, from at least January 2010 until June 2011,

20  Defendant WILLIAM BARKOW ("Barkow") was an owner and registered

21  representative of Felix, and a manager of both Liber Manager and Facie Manager.

22  On information and belief, Barkow controlled Felix, Liber Manager and Facie

23  Manager at all relevant times alleged herein through June 2011.

24     12.   Except as described herein, Plaintiffs are ignorant of the true names of

25  defendants sued as Does 1 through 10, inclusive, and therefore Plaintiffs sue these

26  defendants by such fictitious names.  Following further investigation and discovery,

27  Plaintiffs will seek leave of this Court to amend this Complaint to allege their true

28  names and capacities when ascertained.  These fictitiously-named defendants were

1   involved in the wrongdoing detailed herein, aided or abetted, participated with

2   and/or conspired with the named defendants in the wrongful acts and course of

3   conduct or otherwise caused the damages and injuries claimed herein and are

4   responsible in some manner for the acts, occurrences and events alleged in this

5   complaint.

6         13.    Plaintiffs are informed and believe, and thereon allege, that each of the

7   defendants is now and has been at all times herein mentioned the agent, servant,

8   employee, partner, associate, joint venturer, co-participant and/or principal of each

9   of the remaining defendants, and that each defendant has been, at all times

10   mentioned herein, acting within the scope of such relationship and with the full

11   knowledge, consent, authority, ratification and/or permission of each of the

12   remaining defendants.

13         14.    Assignor ELIAS ARGYROPOULOS ("Argyropoulos") is an

14   individual residing in Montecito, California, and is the President and sole

15   shareholder of non-party Prima Capital Group, Inc.

16         15.    Assignor PRIMA CAPITAL GROUP, INC. ("Prima") is a Delaware

17   corporation with its principal place of business in Santa Barbara, California.

18   **FACTUAL ALLEGATIONS**

19         16.    This lawsuit arises out of a series of private placement investments (and

20   attempted investments) by Prima in limited liability companies created by

21   defendants for the purpose of holding pre-IPO, private-company stock in Facebook,

22   Inc. and Jumio, Inc.

23   **Prima's Investments in Jumio, Inc.**

24         17.    On information and belief, from 2010 through at least early 2012, Felix

25   solicited investors, including Prima in California, to invest in pre-IPO shares of

26   Jumio, Inc. (the "Jumio Shares") through the purchase of limited liability company

27   interests in Liber Argentum, a limited liability company created and controlled by

28   Felix, Mazzola and Barkow.

OGLOZA FORTNEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

18.     According to offering documents transmitted to Prima and other investors by Felix, the offered LLC interests in Liber Argentum represented a percentage of underlying Jumio Shares, which Liber Argentum intended to purchase with investors' funds and hold for the ultimate benefit of and distribution to Liber Argentum investors.

19.     On information and belief, Liber Argentum was organized as a "series" limited liability company.  Under this structure, Liber Argentum issued interests to investors in series (e.g., A, B, C), with each series corresponding to underlying Jumio shares purchased at various times in various transactions.  On information and belief, for all investments in all series of Liber Argentum interests, Liber Argentum used Felix as its placement agent.

20.     Liber Argentum's limited liability company operating agreement ("Liber Argentum Operating Agreement") provided that Liber Argentum would be managed by Liber Manager.  Felix and/or Liber Argentum represented that the managers of Liber Manager were Mazzola and Barkow.  On information and belief, Liber Manager at all times had exclusive power to control Liber Argentum.

21.     On or around August 25, 2010, Felix sent Prima various offering documents, including a subscription agreement, for Liber Argentum Series A interests at a price representing $1/share for the underlying Jumio shares.  On or around September 7, 2010, Prima purchased $41,000 worth of Liber Argentum Series A interests, representing a 2.9% interest in Liber Argentum.

22.     Under the Liber Argentum Operating Agreement, investors in each series of Liber Argentum interests are entitled to "preemptive rights" to purchase an amount of LLC interests offered in any subsequent series that is sufficient to maintain their respective relative ownership percentages in Liber Argentum as a whole.  Specifically, the Liber Argentum Operating Agreement provides in relevant part that:

[T]he **Company shall only issue additional securities** in accordance with the following terms:

(a) The Company shall not issue any additional Interests or other equity securities unless it first delivers to each Member (each such Person being referred to in this Section as an "Offeree") a written notice (the "Notice of Proposed Issuance") specifying the type and total number of such securities that the Company then intends to issue (the "Offered New Securities"), all of the terms, including (i) the price upon which the Company proposes to issue the Offered New Securities (ii) **that the Offerees shall have the right to purchase the Offered New Securities in the manner specified in this Section** for the same price per share and in accordance with the same terms and conditions specified in such Notice of Proposed Issuance and (iii) specifying the number of Offered New Securities that each Member **is entitled to purchase**.

(b) The Offered New Securities **will be offered** to the holders of the respective Series of Interests in the Company as follows:

(i)     each Series of Interests shall be offered an aggregate number of Offered New Securities equal to: (i) the number or face amount of Offered New Securities, multiplied by a (ii) fraction, the numerator of which is (x) the number of shares of common stock of the Issuer (on an as-converted basis) held by such Series; and (y) the denominator is the number of shares of common stock of the Issuer (on an as-converted basis) held by all Series of the Company in the aggregate;

(ii)     within each Series of Interests, each holders of the Interests of such Series shall be offered that number of Offered New Securities as is equal to (i) the number of Offered New

OGLOZA FORTNEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Securities offered to the holders of such Series, multiplied by (ii) such Member's Series Percentage.

(c) During the fifteen (15) business day period commencing on the date the Company delivers to all of the Offerees the Notice of Proposed Issuance (the "Exercise Period"), the **_Offerees shall have the option to purchase_** the Offered New Securities at the same price per Interest and upon the same terms and conditions specified in the Notice of Proposed Issuance. Each Offeree electing to purchase Offered New Securities (an "Exercising Offeree") must give written notice of its election to the Company prior to the expiration of the Exercise Period. Additionally, each Exercising Offeree may indicate any additional amount over and above its pro rata share of Offered New Securities for which such Exercising Offeree will subscribe if other Offerees subscribe for less than their pro rata share of Offered New Securities (the "Undersubscription Amount").

(d) If all Exercising Offerees do not commit to purchase their full pro rata share of Offered New Securities (such unclaimed shares being the "Available Undersubscription Amount"), then each Exercising Offeree who has committed to purchase its full pro rata share of Offered New Securities **_shall be allocated_** Offered New Securities in an amount equal to its Undersubscription Amount (if any) in addition to the pro rata share of Offered New Securities it has subscribed for; provided, however, that if the aggregate Undersubscription Amounts subscribed for exceeds the Available Undersubscription Amount, the portion of the Available Undersubscription Amount to be purchased by such Exercising Offerees shall be allocated among them in proportion that the number of Offered New Securities offered to each such Offeree

bears to the number of Offered New Securities offered to all Exercising Offerees, up to, in each instance, the Undersubscription Amount subscribed for by each applicable Exercising Offeree. (emphasis added)

23. On or about December 15, 2010, Felix sent Liber Argentum Series A interest owners, including Prima, notice that Liber Argentum intended to offer Series B interests in a total amount of $3,400,000 for the purpose of making another investment in Jumio.

24. The investment in Jumio in connection with the Liber Argentum Series B offering was to be made at an underlying share price (in Jumio) of $0.50/share. On information and belief, pursuant to a full-ratchet provision in connection with Liber Argentum's September 2010 investment in Jumio, Jumio issued a share dividend equal to the amount of shares purchased, such that the effective exercise price of the underlying shares represented by the Liber Argentum Series A interests was $0.50. Accordingly, Prima's Liber Argentum Series A interest at or around the time of the Series B offering reflected 82,000 underlying shares of Jumio.

25. The preemptive-rights notice sent by Felix to Prima indicated that Prima was entitled to purchase a "Basic Amount" of $100,072 worth of Liber Argentum Series B interests (equivalent to 200,144 underlying Jumio shares), as well as its pro-rata share of any Undersubscription Amount, if available.

26. On information and belief, closing of the Liber Argentum Series B offering was extended by Felix and Liber Argentum Manager until February 25, 2011. On information and belief, on or around February 2, 2011, Felix sent Prima updated offering documents to Prima, which Prima executed and returned to Felix. Prima's preemptive-rights notice to Felix and Liber Argentum indicated that it would purchase the full amount of its Basic Amount ($100,072) and up to an additional $500,000 of available Series B interests.

27. On or about February 9, 2011, Prima executed a subscription

agreement for a total amount of $334,000 worth of Liber Argentum Series B interests.  Prima's subscription agreement was accepted by Liber Manager on the same day.  On February 15, 2011, Prima confirmed its subscription for $334,000 worth of Liber Argentum Series B interests.

28.    On or around February 23, 2011, Barkow sent an email to prospective investors with the subject line "Last Call For Jumio" and stating that the "window of opportunity is closing quickly," thereby indicating that as of that date interests in Liber Argentum Series B were not fully subscribed but rather were still available.

29.    On information and belief, closing of the Liber Argentum Series B offering occurred on or around February 25, 2011.

30.    On or around August 10, 2011, Felix notified Prima that $334,000 was being returned to Prima by wire transfer.  On information and belief, no explanation for the return of this amount was offered by Felix at any time.  On information and belief, neither Felix nor Liber Argentum (nor any other person) ever informed Prima that its purchase of Liber Argentum Series B interests had not been completed.

31.    On or around November 10, 2011, Felix or Liber Argentum sent its investors notice that it intended to commence an offering for Liber Argentum Series C interests.  The notice sent to Prima reflected Prima's ownership of a 2.94% interest in Liber Argentum Series A, but no ownership interest in Liber Argentum Series B.

32.    On information and belief, no Liber Argentum Series B ownership interests were ever issued to Prima.

33.    On information and belief, the privately-held shares of Jumio, Inc. are valued at approximately $7.50 per share.

### Prima's Investments in Facebook

34.    From 2010 through at least early 2012, Felix also solicited investors, including Prima in California, to invest in pre-IPO shares of Facebook, Inc. (the "Facebook Shares") through the purchase of limited liability company interests in Facie Libre.  As with Liber Argentum, Facie Libre is a limited liability company

created and controlled by Felix, Mazzola and Barkow, and LLC interests in Facie Libre would represent underlying Facebook Shares, which Facie Libre intended to purchase with investors' funds and hold for the ultimate benefit of and distribution to Facie Libre investors.

35.   On information and belief, as with Liber Argentum, Facie Libre was organized as a "series" limited liability company.  Under this structure, Facie Libre would issue interests to investors in series (e.g., A, B, C), with each series corresponding to underlying Facebook shares purchased at various times in various transactions.  On information and belief, for all investments in all series of Facie Libre interests, Facie Libre used Felix as its placement agent.

36.   Facie Libre's limited liability company operating agreement ("Facie Libre Operating Agreement") provided that Facie Libre would be managed by Facie Manager.  Felix and/or Facie Libre represented that the managers of Facie Manager were Mazzola and Barkow.  On information and belief, Facie Manager at all times had exclusive power to control Facie Libre.

37.   On or about October 4, 2010, Felix (through Barkow) informed Prima that Felix and Facie Libre were offering Series D interests in Facie Libre, representing underlying Facebook shares priced at $13.20 per share.

38.   On or about October 25, 2010, Prima executed subscription documents and transmitted funds for the purchase of $819,800 worth of Facie Libre Series D interests.

39.   On or about December 6, 2010, Felix and/or Facie Manager accepted Prima's subscription and closed the Series D transaction.  By letter dated February 18, 2011, Felix confirmed Prima's purchase of Series D interests and represented to Prima that its investment of $819,800 equaled 4.124% of Facie Libre Series D, or approximately 56,834.7 underlying Facebook shares.

40.   On information and belief, in January and February of 2011, Felix and/or Facie Libre informed Prima of an offering of Facie Libre Series M interests,

1  representing underlying Facebook shares priced around $25 per share.

2  41.    On or around February 25, 2011, Prima executed subscription

3  documents and transmitted funds for the purchase of $289,570 worth of Facie Libre

4  Series M interests.

5  42.    On or about February 25, 2011, Felix and/or Facie Manager accepted

6  Prima's subscription and closed the Series M transaction.  By letter dated April 28,

7  2011, Felix confirmed Prima's purchase of Series M interests and represented to

8  Prima that its investment of $289,570 equaled 3.6876% of Facie Libre Series M, or

9  approximately 10,000.3 underlying Facebook shares at an effective price per share

10  of $28.95.

11  43.    Between February 25, 2011 and June 16, 2011, Prima transmitted an

12  additional $185,435.97 to Felix for investment in another series of Facie Libre.

13  44.    On a date after June 16, 2011, Prima received notice indicating that

14  Facie Libre intended to terminate Prima's interests as a Member of Facie Libre.

15  45.    The termination letter indicated that Facie Libre had placed

16  $1,294,805.97 (i.e., the total amount of funds transmitted to Facie Libre and/or Felix

17  for the purchase of Facie Libre interests) into a segregated account and would

18  release the funds only if Prima countersigned a purported rescission and release of

19  claims in favor of Facie Libre.  Facie Libre threatened that it would bring litigation

20  in the event Prima failed to countersign the purported release.

21  46.    The Facie Libre Operating Agreement provides as follows:

22  8.8    <u>Required Withdrawal</u>.  The Manager may require any

23  Member to withdraw either generally or as a Member of any

24  individual Series of Interests in any other circumstance in which

25  the Manager(s), in its or their discretion, with or without cause,

26  deem(s) such withdrawal to be in the best interest of the

27  Company.  Such withdrawal shall be effective five (5) Working

28  Days after notice in writing thereof is given to such Member,

1    unless such notice is rescinded by the Manager within such five

2    (5) business day period.

4          8.9    <u>Withdrawal Payment</u>.

5             (a)    A withdrawing Member shall be entitled to receive

6    from the Company in respect of any Interests of any Series from

7    which such Member is withdrawing an amount equal to the

8    Withdrawal Value of such Interests as of the Withdrawal Date . .

9    . . The amount of the Withdrawal Value is hereinafter referred to

10    as the "Withdrawal Payment." The withdrawing Member shall

11    not have any right to receive any profits attributable to the use of

12    such Member's Interests, any Issuer Securities or any Company

13    Property after the Withdrawal Date. The Withdrawal Payment

14    shall be payable in cash or in kind or in a combination thereof, at

15    the option of the Manager at the time of payment, and, to the

16    extent paid in kind, the assets so distributed shall be valued at

17    their Fair Market Value as of the Withdrawal Date....

18             (b)    The Withdrawal Value of a Member's Interests of

19    any Series shall be calculated based upon the balance of the

20    withdrawing Member's Capital attributable to such Series as of

21    the Withdrawal Date adjusted as if (i) all the assets of such Series

22    had been sold for their Fair Market Value, (ii) all Company

23    liabilities attributable to such Series had been paid, and (iii) all

24    allocations required by Article IV in respect of the Interests of

25    such Series had been made, all on the Withdrawal Date.

27    47.    On information and belief, Facie Libre did not calculate or make a

28    Withdrawal Payment to Prima as required under the Operating Agreement.

48.     On information and belief, on or around the date Facie Libre purported to terminate and/or rescind Prima's interests in Facie Libre, Prima's interests were valued in excess of $1,900,000, and most likely much more than that amount.

## FIRST CAUSE OF ACTION

### (For Breach of Written Contract – Liber Argentum Series B)

### (Against Defendant Liber Argentum)

49.     Plaintiffs reassert and reallege paragraphs 1 through 48, inclusive, as though fully set forth herein.

50.     Liber Argentum and Prima entered into the Liber Argentum Operating Agreement on or about September 7, 2010, under which agreement Prima was granted preemptive rights to purchase interests in any future series of Liber Argentum interests.  The Liber Argentum Operating Agreement further provided that existing Members would be entitled to purchase their pro rata share of any available undersubscription amount before any newly-issued units would be sold to new investors.

51.     In connection with Liber Argentum's offering of Series B interests, Prima executed a preemptive rights notice that it desired to purchase its full Basic Amount ($100,072) of Liber Argentum Series B interests and up to $500,000 of additional interests, as available.  Prima later executed a subscription agreement for $334,000 worth of Liber Argentum Series B interests, which subscription was accepted by and therefore binding upon Liber Argentum.

52.     Prima tendered the full amount due under the Series B subscription agreement to Liber Argentum through Felix.  On information and belief, Prima has fully performed all other conditions and obligations required by both agreements.

53.     On information and belief, all conditions required for Liber Argentum's performance under the Liber Argentum Operating Agreement and Series B subscription agreement had occurred or were excused and/or waived.

54.     No Liber Argentum Series B interests were issued to Prima.  Liber

Argentum breached the Liber Argentum Operating Agreement by refusing to honor Prima's preemptive rights to purchase no less than $100,072 worth of Liber Argentum Series B interests, as well as its right to purchase its pro rata share of any available undersubscription amount.

55. Liber Argentum also breached the Liber Argentum Series B subscription agreement, which was binding on Liber Argentum, by failing to issue $334,000 worth of Liber Argentum Series B interests to Prima.

56. Prima was entitled to purchase, and is owed, no less than $100,072 worth of Liber Argentum Series B interests, representing no less than 200,144 underlying shares of Jumio, Inc., and may in fact have been entitled to purchase up to the entire amount of its subscription of $334,000 or 668,000 underlying shares.

57. As a direct result of Liber Argentum's breaches of the Liber Argentum Operating Agreement and Series B subscription agreement, Prima suffered harm in that it was not issued the Liber Argentum Series B interests for which it had contracted.

58. Prima and, by assignment, plaintiffs lack an adequate remedy at law and thus Plaintiffs are entitled to specific performance of the contract and the issuance and delivery of a number of Liber Argentum Series B interests to be determined at trial.

59. WHEREFORE, Plaintiffs pray for judgment against defendant Liber Argentum as set forth below.

## SECOND CAUSE OF ACTION

**(For Tortious Interference with Contract – Liber Argentum Series B)**

**(Against Defendants Felix, Liber Manager, Mazzola and Barkow)**

60. Plaintiffs reassert and reallege paragraphs 1 through 59, inclusive, as though fully set forth herein.

61. Pursuant to the Liber Argentum Operating Agreement, into which Prima and Liber Argentum entered on or about September 7, 2010, Prima was

entitled to purchase its Basic Amount of $100,072 worth of Liber Argentum Series B interests pursuant to its preemptive rights, and to purchase its pro rata share of any available undersubscription amount of Liber Argentum Series B interests.

62.     Prima executed a preemptive rights notice that it desired to purchase its full Basic Amount ($100,072) of Liber Argentum Series B interests.  Prima and Liber Argentum thereafter entered into a Series B subscription agreement for $334,000 worth of Liber Argentum Series B interests, which was accepted by and therefore binding on Liber Argentum.

63.     Prima tendered the full amount under the subscription agreement to Liber Argentum through Felix.  On information and belief, Prima has fully performed all other conditions and obligations required by both agreements.

64.     Liber Manager, Felix, Mazzola and Barkow, by virtue of their positions as Manager of Liber Argentum, placement agent for the transaction, and/or as control persons of either entity, were aware that Prima had entered into the Liber Argentum Operating Agreement and Series B subscription agreement, were aware of Prima's preemptive rights, and were aware of both Prima's Basic Amount and the full amount ($334,000) of Liber Argentum Series B interests for which it had subscribed.

65.     Plaintiffs are informed and believe that Liber Manager, Felix, Mazzola and/or Barkow, who individually and/or collectively controlled Liber Argentum, in order to secure benefits to themselves, caused Liber Argentum to fail to perform its contract with Prima.

66.     As a direct and proximate result of the acts of defendants Liber Manager, Felix, Mazzola and/or Barkow, Prima suffered harm in that it was not issued the Liber Argentum Series B interests for which it had contracted.  Plaintiffs are therefore entitled to damages in an amount to be proven at trial.

67.     WHEREFORE, Plaintiffs pray for judgment against defendants Liber Manager, Felix, Mazzola and Barkow as set forth below.

**THIRD CAUSE OF ACTION**

**(For Breach of Written Contract – Facie Libre)**

**(Against Defendant Facie Libre)**

68.    Plaintiffs reassert and reallege paragraphs 1 through 67, inclusive, as though fully set forth herein.

69.    Prima and Facie Libre entered into the Facie Libre Operating Agreement on or around December 6, 2010.  Under that agreement, upon the termination of Prima's membership interests in Facie Libre, Prima was owed an appropriate Withdrawal Payment.

70.    Facie Libre did not make the required Withdrawal Payment.  In so doing, Facie Libre breached the Facie Libre Operating Agreement.

71.    At the time of Facie Libre's breach, Prima had no further performance obligations under the Facie Libre Operating Agreement.

72.    Plaintiffs are informed and believe that the value of Prima's Facie Libre interests had appreciated significantly in value at the time of Facie Libre's termination of Prima's membership interests, and were fairly valued in excess of $1,900,000.

73.    As a direct result of Facie Libre breach of the Facie Libre Operating Agreement, Prima suffered damages in an amount to be proven at trial, but in no event less than $605,194.

74.    WHEREFORE, Plaintiffs pray for judgment against defendants Facie Libre as set forth below.

**FOURTH CAUSE OF ACTION**

**(For Breach of the Covenant of Good Faith and Fair Dealing – Facie Libre)**

**(Against Defendant Facie Libre)**

75.    Plaintiffs reassert and reallege paragraphs 1 through 74, inclusive, as though fully set forth herein.

76.    Prima and Facie Libre entered into the Facie Libre Operating

1  Agreement on or around December 6, 2010.  Under that agreement, upon the

2  termination of Prima's membership interests in Facie Libre, Prima was owed an

3  appropriate Withdrawal Payment.

4      77.    At the time of Facie Libre's breach, Prima had no further performance

5  obligations under the Facie Libre Operating Agreement.

6      78.    Plaintiffs are informed and believe that the value of Prima's Facie Libre

7  interests had appreciated significantly in value at the time of the termination of

8  Prima's membership interests, and were fairly valued in excess $1,900,000.

9      79.    Rather than making the Withdrawal Payment, Facie Libre retained the

10  benefit of Prima's appreciated investment for itself and those who controlled it.

11      80.    Facie Libre's termination of Prima's membership interests in Facie

12  Libre and concomitant failure to pay Prima the value of its appreciated assets at the

13  time of termination unfairly interfered with Prima's right to receive the benefit of its

14  contract with Facie Libre.

15      81.    Facie Libre's failure to pay the required Withdrawal Payment, and

16  retention of the appreciated value of Prima's membership interests, constituted a

17  breach of the duty of good faith and fair dealing inherent in the parties' contract.

18      82.    As a direct result of Facie Libre's breach of the covenant of good faith

19  and fair dealing, Prima suffered damages in an amount to be proven at trial, but in no

20  event less than $605,194.

21      83.    WHEREFORE, Plaintiffs pray for judgment against defendant Facie

22  Libre as set forth below.

23  ## FIFTH CAUSE OF ACTION

24  **(For Tortious Interference with Contract – Facie Libre)**

25  **(Against Defendants Facie Libre Manager and Mazzola)**

26      84.    Plaintiffs reassert and reallege paragraphs 1 through 83, inclusive, as

27  though fully set forth herein.

28      85.    Prima and Facie Libre entered into the Facie Libre Operating

Agreement on or around December 6, 2010.  Under that agreement, upon the termination of Prima's membership interests in Facie Libre, Prima was owed an appropriate Withdrawal Payment.

86.     Facie Manager, by virtue of its position as Manager of Facie Libre, and Mazzola, as a control person of Facie Manager, were aware that Prima had entered into the Facie Libre Operating Agreement, were aware of Prima's right to the Withdrawal Payment, and were aware that the value of Prima's Facie Libre interests had appreciated significantly in value since purchase.

87.     Plaintiffs are informed and believe that Facie Manager and/or Mazzola, who individually and/or collectively controlled Facie Libre, in order to secure benefits to themselves, caused Facie Libre to fail to perform its contract with Prima.

88.     As a direct and proximate result of the acts of defendants Facie Manager and Mazzola, Prima suffered harm in that it was not issued Withdrawal Payment due upon termination of Prima's interests in Facie Libre.  Plaintiffs are therefore entitled to damages in an amount to be proven at trial, but in no event less than $605,194.

89.     WHEREFORE, Plaintiffs pray for judgment against defendants Facie Libre as set forth below.

## SIXTH CAUSE OF ACTION

### (For Conversion – Facie Libre)

### (Against Defendants Facie Libre, Facie Manager and Mazzola)

90.     Plaintiffs reassert and reallege paragraphs 1 through 89, inclusive, as though fully set forth herein.

91.     At the time of Facie Libre's purported termination of Prima's membership interests in Facie Libre, Prima owned the Facie Libre interests, which had a fair market valuation in excess of $1,900,000.

92.     Defendants Facie Libre, Facie Manager and Mazzola intentionally and substantially interfered with Prima's property interest by purporting to terminate

1    Prima's interests in Facie Libre and take possession of those interests.

2         93.    Defendants Facie Libre, Facie Manager and Mazzola returned to Prima

3    only a portion of the value of Prima's interests, namely $1,294,805.97.  In so doing,

4    the same defendants unjustly have retained the remaining value of Prima's interests

5    for their own benefit.

6         94.    On information and belief, Prima did not consent to Facie Libre, Facie

7    Manager and/or Mazzola's retention of the full value of Prima's Facie Libre

8    membership interests.

9         95.    By Facie Libre, Facie Manager and Mazzola's actions, Prima has been

10   harmed and has suffered damages in the amount not less than $605,194.

11        96.    WHEREFORE, Plaintiffs pray for judgment against Defendants Facie

12   Libre, Facie Manager and Mazzola as set forth below.

13                          **PRAYER FOR RELIEF**

14        WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

15        1.     For specific performance of the Liber Argentum Operating Agreement

16   and Series B subscription agreement executed by Prima, and the transfer of not less

17   than 200,144 (and up to 668,000) Liber Argentum Series B interests to Prima.

18        2.     For money damages for the negligent and/or intentional interference

19   with contractual relations between Prima and Liber Argentum, in an amount to be

20   determined at trial.

21        3.     For money damages for breach of the Facie Libre Operating

22   Agreement, in an amount to be determined at trial but in no event less than $605,194.

23        4.     For money damages for the negligent and/or intentional interference

24   with contractual relations between Prima and Facie Libre, in an amount to be

25   determined at trial but in no event less than $605,194.

26        5.     For money damages for conversion of the value of Prima's Facie Libre

27   membership interests, in an amount to be determined at trial but in no event less than

28   $605,194.

OGLOZA FORTNEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.      For such other and further legal or equitable relief as the court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues which are subject to adjudication by a trier of fact.

Dated:  June 16, 2014                    OGLOZA FORTNEY LLP

By: _____
        David C. Fortney
        Attorneys for Plaintiffs RODNEY
        MILLER and MILLER FAMILY
        INVESTMENT, L.P.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Rodney Miller and Miller Family Investment, L.P. | ) ) ) ) | **CV14-4617** $SS$ |
| _Plaintiff(s)_ | ) ) ) | |
| v. | ) | Civil Action No. |
| Felix Investments LLC; Facie Libre Associates II, LLC; Facie Libre Mgmt Assoc's, LLC; Liber Argentum Associates, LLC; Liber Argentum Mgmt Assoc's, LLC; Frank Mazzola; William Barkow; and Does 1-10 | ) ) ) ) ) ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     David Fortney
Ogloza Fortney LLP
505 Pacific Avenue, Suite 201
San Francisco, California 94133

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

CHRIS SAWYER

Date:  6-16-14                                        _____
_Signature of Clerk or Deputy Clerk_

1149

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| Rodney Miller and Miller Family Investment, L.P. | Felix Investment LLC; Facie Libre Associates II, LLC; Facie Libre Management Associates, LLC; Liber Argentum Associates, LLC; Liber Argentum Management Associates, LLC; Frank Mazzola; William Barkow; and Does 1-10 |

| (b) County of Residence of First Listed Plaintiff    Dallas, Texas | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| David Fortney, Ogloza Fortney LLP<br>535 Pacific Avenue, Suite 201<br>San Francisco, CA 94133<br>(415) 912-1850 | |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ at least $605,194

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 1332(a)(1)

### VII. NATURE OF SUIT (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | | ☐ 443 Housing/ Accommodations | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

| FOR OFFICE USE ONLY: | Case Number: | |
|---|---|---|
| CV-71 (06/14) | CIVIL COVER SHEET | Page 1 of 3 |

CV14-4617

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No <br><br> If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no, " skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | **A.** <br> Orange County | **B.** <br> Riverside or San Bernardino County | **C.** <br> Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the <br> SOUTHERN DIVISION. <br> Enter "Southern" in response to Question E, below, and continue from there. <br> If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the <br> EASTERN DIVISION. <br> Enter "Eastern" in response to Question E, below. <br> If "no," your case will be assigned to the WESTERN DIVISION. <br> Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**CIVIL COVER SHEET**

**IX(a).  IDENTICAL CASES**:  Has this action been previously filed **in this court**?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b).  RELATED CASES**:  Is this case related (as defined below) to any cases previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐  A.  Arise from the same or closely related transactions, happening, or event;

☐  B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C.  For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X.  SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE:  6/16/2014

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |